OWEN P. LEE *vs.* EVERETT E. JONES *et al.*

MARCH 10, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Malicious Prosecution. Discontinuance of Criminal Complaint.*

Plaintiff is not barred from maintaining an action for malicious prosecution by the fact that he consented to the discontinuance of the criminal complaint against him, where, after notice to his attorney that the prosecutor considered plaintiff innocent of the charge against him, the attorney asked the prosecutor if he would have the case dismissed, and it was discontinued. Distinguishing *Russell* v. *Morgan*, 24 R. I. 134.

*(2) False Imprisonment. Malicious Prosecution.*

An action will not lie against a defendant either for false imprisonment or for malicious prosecution where he simply made complaint of the commission of a crime and the proceedings against plaintiff were begun by the sheriff acting on his own judgment.

*(3) Malicious Prosecution. False Imprisonment.*

Inaccuracy in a criminal complaint in the allegation of the person defrauded is immaterial in proceedings brought by the defendant in such criminal complaint charging false imprisonment and malicious prosecution as the real question is not who was defrauded but who committed the fraud.

*(4) Criminal Complaint. Time. False Imprisonment. Malicious Prosecution.*

In a criminal complaint the allegation of the date of the commission of the crime is formal and the prosecution is not bound thereby and an error in this regard is not material in an action by the defendant in the criminal complaint charging false imprisonment and malicious prosecution.

*(5) False Imprisonment.*

An action for false imprisonment will not lie when the arrest is made under process valid on its face and issued by a court of competent jurisdiction, even if the investigation by the officer was insufficient, as negligence of the officer does not invalidate the process, the gist of the action being the unlawful detention of another without his consent, and malice not being an essential element of this form of action.

*(6) Malicious Prosecution. Probable Cause. Question of Law.*

Where the facts are not in dispute, the question of probable cause is one of law.

*(7) Malcious Prosecution. Probable Cause.*

Where an officer after an investigation as to guilt of the accused, had reasonable grounds to believe him probably guilty, an action for malicious prosecution will not lie.

*(8) Malicious Prosecution. Probable Cause.*

An honest and reasonable belief as to guilt of accused is a valid defence to an action for malicious prosecution.

*(9) Malicious Prosecution. Probable Cause.*

Where an officer stated the case fairly to his counsel and acted in good faith on the advice of counsel, he is not liable for malicious prosecution.

TRESPASS for false imprisonment in which counts in trespass on the case for malicious prosecution were joined. Heard on exceptions of plaintiff and overruled.

STEARNS, J. This is an action of trespass for false imprisonment in which are joined counts in trespass on the

case for malicious prosecution. The defendant Everett E. Jones pleaded the general issue to each count. The defendant John R. Wilcox, who is the Sheriff of Washington County, to the counts for false imprisonment, pleaded justification in that the arrest complained of was made by him in his official capacity on a valid warrant commanding the arrest of the plaintiff, and the general issue to the counts for malicious prosecution.

The case was tried before a jury and at the conclusion of the testimony the trial justice, on motion of the defendants, directed a verdict for the defendants. Plaintiff's exception to this action of the trial justice is the main question raised by his bill of exceptions. It is conceded that the action of the trial justice was correct in directing a verdict in favor of the defendant Oliver Jones.

In the summer of 1918 a check dated July 11, 1918, drawn by the Coast Fish Co. Inc., of New York City, for $45.25, payable to Elmer Babcock, a resident of Wakefield, R. I., was received by mail at the Post Office in Wakefield and by mistake the letter, enclosing the check, which was addressed to Elmer Babcock was deposited in the Post Office box of one Elmer E. Babcock, a nephew of the payee.

Elmer E. Babcock, who knew that the check did not belong to him, indorsed the check as follows, "Elmer Babcock," and, as he admitted, thereby committed a forgery. He testified that he held the check for a short time, but does not know just how long, and then cashed it at the store of defendant Everett E. Jones in Wakefield, who was doing business under the name and style of "Jones Bros." Everett E. Jones testified that he knew nothing of the cashing of this check until late in the fall, when he was notified by the Wakefield Trust Co., with whom the check had been deposited for collection, that the indorsement was forged; he paid the amount of the check to the Trust Co. and some six weeks later the check was returned to him. Jones had no record in his store of the date of the cashing of the check but upon inquiry he learned from one of his

clerks that, although she could not tell the time definitely, she thought she remembered cashing the check for the plaintiff Owen Lee. Plaintiff was a customer of Jones and had cashed checks at different times at the store. On or about July 15th plaintiff made a purchase at the store, in payment for which it is claimed a check was cashed for him. After receiving the check from the bank Jones turned the check over to Sheriff Wilcox on December 8th and the latter at once began an investigation of the case. At the request of the Sheriff, Jones procured and gave to the Sheriff a sample of the plaintiff's handwriting in which the words "Elmer Babcock" appeared. At this time Jones did not know when the check had been cashed, but supposed from the date on the check that it had been cashed at his store a few days after the date of the check. He did not tell the Sheriff the date when it was cashed and does not remember whether the Sheriff asked in regard to this. Subsequently it was discovered from the Trust Co. that the check was deposited on Monday, August 26th, and Jones from that fact thought the check must have been cashed in his store on the preceding Saturday, the 24th of August. Plaintiff, who had been living with an aunt in Wakefield, after the 18th of July went to live for a few days with his uncle Elmer Babcock. On the 22d of July, plaintiff was mustered into the United States Army under the Selective Service act, at East Greenwich, and on the following day he went to an army camp on Long Island. He was honorably discharged from the service on December 13th and arrived home in Wakefield, December 14. He was in Wakefield on leave a part of two days in early November.

Sheriff Wilcox testified that Jones told him he thought the check was cashed about the 14th or 15th of July, judging from the date of the check and also because plaintiff had bought clothes in his store about the 15th or 16th of July. After interviewing the clerks in Jones's store, the Sheriff interviewed the postmaster and his assistant. From them he learned that plaintiff's mail had been regularly placed in

the box of his uncle, Elmer Babcock, from whence all of the mail in the box was taken at different times by plaintiff or Babcock's children; that in the fall of 1918 the postmaster had been directed by Mrs. Elmer Babcock not to deliver any more of their mail to any one except on written order. The Sheriff submitted the check and specimens of plaintiff's handwriting to various people, including the postmaster and the teller of the Trust Co. All agreed that the handwriting was the same on each exhibit. The Sheriff then stated the results of his investigation and submitted the writings to a friend, a captain of police in the city of Providence, who had had much experience in criminal cases and also to the justice of the local district court who was a lawyer. By each of them he was advised that the case was a proper one to be brought against the plaintiff and that the handwriting of each exhibit was made by the same person. The Sheriff then consulted his attorney in Westerly, a practicing lawyer of experience and of good standing in his profession. The Sheriff testified that he stated to his attorney all the facts in regard to the case. In this he is corroborated by the attorney who testified in detail as to the statements made to him by the Sheriff. The attorney advised the Sheriff that he had a good case against the plaintiff and that he thought it was his duty to bring the prosecution. The Sheriff then applied to the judge of the district court, who prepared a complaint and warrant for the arrest of the plaintiff on the charge of forgery which was sent by mail to the Sheriff and on the 28th of December the complaint and warrant, having been sworn to before a local justice of the peace, was turned over by the Sheriff to his deputy with instructions to have the plaintiff brought in. The deputy notified plaintiff that the Sheriff wished to see him and on the afternoon of the same day, after an interview between the plaintiff and the Sheriff, the Sheriff directed the deputy to serve the warrant and plaintiff was arrested thereon. He was arraigned the same day and for want of bail was committed to the county jail. On the following Monday

morning, the first court day after his arrest, he was arraigned in the district court and gave bail. Shortly afterward the Sheriff for the first time learned there was another Elmer Babcock in Wakefield. He obtained samples of the handwriting of this Elmer E. Babcock and, finding that it was similar to the handwriting on the check, he interviewed Elmer E. Babcock with the result that the latter admitted he had forged the indorsement on the check. Thereupon (1) the Sheriff immediately telephoned the attorney for the plaintiff, and told him that his client was innocent. Plaintiff's attorney, according to the testimony of the Sheriff, which was uncontradicted, then asked the Sheriff if he would have the case against plaintiff dismissed. The Sheriff stated that he would do so and on the next court day the case was discontinued in open court, the Sheriff stating to the court that Lee was innocent and that he wanted to exonerate Lee and have him honorably discharged from the court.

Plaintiff is not barred by thus consenting to the discontinuance of the criminal complaint. The case is different from *Russell* v. *Morgan*, 24 R. I. 134, in which case the discontinuance of an action for malicious prosecution was entered by the court in accordance with the written agreement of the parties to the action. In the circumstances to require the plaintiff to insist on further court proceedings in order to protect any right of action he might have against the defendants would be unreasonable and would only result in giving greater publicity to the charge erroneously made.

It is claimed that Everett E. Jones had so connected himself with the institution and prosecution of the complaint that he made himself finally responsible therefor and that there was such irregularity in the making of the complaint and the issuing of the warrant thereon that neither of the defendants is entitled to any protection by reason of the issuance of the warrant. There is no evidence to support a finding against Everett E. Jones on any of the counts. He made a complaint of the commission of a crime. The (2) proceedings were begun by the Sheriff acting on his own

judgment.    The complaint and warrant charge that the check was cashed at Jones Bros. store July 20.    Plaintiff expressly disclaims any charge that this allegation was due to any conscious misrepresentation by defendant Wilcox, but he does claim that it was a misstatement which was due to gross negligence; that on the back of the check it appears that the check was paid by the drawee bank, August 28, 1918, and thus it was notice to the Sheriff of the date of the offence.    Plaintiff appears to be in error in this respect. Some of the indorsements are not very plain.   Neither the indorsement of Jones Bros. to Wakefield Trust Co. nor of the latter company to any bank for collection have any date. The only date, August 28th, is the receipt of payment by the Franklin Trust Co.    There is nothing on the check which shows the date when it was first cashed.    Negligence is also charged in that the complaint charges an intent to defraud Jones Bros., a copartnership, whereas in fact there was no copartnership.    This inaccuracy in the allegation of the person defrauded is immaterial in the present inquiry. The real question was not who was defrauded, but who committed the fraud.    The allegation of the date is formal and the prosecution is not bound thereby.    Plaintiff's complaint of irregularity in the process then comes to this, that the officer's preliminary investigation was insufficient to justify the proceeding by warrant of arrest.

In *Hobbs* v. *Ray*, 18 R. I. 84 (1892), the facts are not fully stated in the opinion, but from an examination of the original papers in the case, it appears the declaration alleged that defendant "maliciously intending to oppress and unjustly to imprison the plaintiff" procured the issuance of a writ of arrest in a civil action by making a false and fraudulent affidavit that the plaintiff was about to leave the State.    Plaintiff was arrested and imprisoned for three days. He was then, upon his motion, discharged from arrest by the court, who found that the plaintiff had no intention of leaving the State.    Later a demurrer to the declaration was sustained.    It was held that an action for false imprison-

ment would not lie when the arrest is made under process wrongfully obtained but valid on its face and issued by a court of competent jurisdiction, that the gist of the action is the unlawful detention of another without his consent and malice is not an essential element of this form of action.

(5) The decision in the *Hobbs* case was followed and approved in *Lisabelle* v. *Hubert*, 23 R. I. 456; *Calderone* v. *Kiernan*, 23 R. I. 578; see also *Jastram* v. *McAuslan*, 31 R. I. 278.

In the case at bar the sheriff did not know plaintiff and there is no evidence of actual malice. The writ was regular and valid on its face and issued from a court of competent jurisdiction. Even if the investigation by the officer was insufficient, that fact did not make the process invalid. At most the officer was guilty of negligence. This does not invalidate the process and plaintiff's remedy, if any, is by action for malicious prosecution.

We come now to the counts for malicious prosecution. Public policy requires the exposure of crime and punishment of the criminal. It is the duty of the citizen to give notice to the authorities of the commission of crime, and of the officers of the State to investigate and prosecute in proper cases. For these reasons it is generally held, as stated in *Fox* v. *Smith*, 26 R. I. 1, that actions for malicious prosecution are not favored in the law and clear proof of malice and want of probable cause are required to establish a cause of action. But a charge of crime should not be lightly made (6) and in the consideration of the testimony we are not unmindful that an innocent man has been subjected to imprisonment and the temporary disgrace thereof. As the facts are not in dispute, the question of probable cause is one of law. We think there was not sufficient evidence to warrant the submission of the case to a jury.

In *Wells* v. *Jordan*, 20 R. I. 630, the general rule was approved that an officer may arrest without a warrant on reasonable suspicion, founded either on his own knowledge or on information from others, that a felony has been committed. To justify him in acting on information it must

come from creditable persons. In the case at bar a felony had been committed. The officer did not attempt to arrest on suspicion without a warrant, but only proceeded after he had made a rather extensive investigation and had received information from persons whose credibility is not questioned. He believed that plaintiff was guilty. This in itself is not a defence, but if such belief was an honest and reasonable belief and not one arising from some mental pecularity and error of defendant himself, it is a valid defence. *Mowry* v. *Whipple*, 8 R. I. 360. We think the officer had reasonable grounds to believe plaintiff was probably guilty.

The question is, was there sufficient evidence to warrant the district court in finding that defendant was probably guilty (Sec. 19, Chap. 281, Gen. Laws) and in binding him over to await the action of the Grand Jury? There is nothing to indicate that the officer failed to make a full and fair statement of the case to his attorney. His attorney, if he discharged his duty properly, must have passed judgment not only on the results but also on the sufficiency of the investigation made by the officer. Having stated the case fairly to his counsel, and having acted in good faith on the advise of counsel, the officer is not liable for malicious prosecution. *Bartlett* v. *Brown*, 6 R. I. 37; *King* v. *Colvin*, 11 R. I. 582; *Newton* v. *Weaver*, 13 R. I. 616; *Goldstein* v. *Foulkes*, 19 R. I. 291; *St. Pierre* v. *Warner*, 24 R. I. 295.

All of plaintiff's exceptions are overruled and the case is remitted to the Superior Court with instructions to enter judgment on the verdict.

*Curran & Hart,* for plaintiff.

*Green, Hinckley & Allen,* for defendant. *John R. Wilcox, Abbott Phillips, Clifford A. Kingsley,* of counsel.

*Benjamin W. Grim,* for Everett E. Jones.