JOSEPH H. HIGGINS *vs.* ERNEST W. PRATT.

Worcester.   April 5, 1944. — September 12, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Malicious Prosecution. Probable Cause. Practice, Civil,* Exceptions: what questions open; Requests, rulings, and instructions. *Evidence,* Presumptions and burden of proof, Relevancy and materiality. *Witness,* Cross-examination.

The mere fact that a defendant, who, following the charge to the jury, alleged exceptions to refusals to give certain rulings, requested by him before the charge was given, did not also except to portions of the charge inconsistent with such requested rulings, did not preclude him from relying in this court on the exceptions so saved.

The burden is upon the plaintiff in an action for malicious prosecution for an alleged crime to prove by affirmative evidence that, irrespective of the actual state of facts, there was absent from the mind of the defendant when he charged the crime such an honest and reasonable belief as to the facts as would lead a man of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the plaintiff was guilty as charged.

At the trial of an action for malicious prosecution of the plaintiff for conduct alleged to be in violation of §§ 34 and 34A of G. L. (Ter. Ed.) c. 55, in connection with an election in a town, requests by the defendant for rulings, in effect that the defendant had probable cause to believe that the crime had been committed unless at the time he made the charge he "knew in fact that" such sections "did not apply to towns of less than ten thousand population," properly were refused, and a motion that a verdict be ordered for the defendant properly was denied where the defendant relied on a defence that in making the charge he followed advice of counsel and it appeared that he knew that the town in question had a population of less than ten thousand and there was evidence raising an issue for the jury whether he made a full and honest disclosure of facts to his counsel and honestly followed the advice given.

A request, by the defendant at the trial of an action for malicious prosecution, for a ruling respecting the issue whether the defendant had probable cause to believe the plaintiff guilty as charged, in substance

that, if the defendant in consulting counsel as to his course of conduct did not withhold information with intent to procure an opinion that might operate to protect him against a suit, but, on the contrary, being doubtful of his legal rights, consulted counsel and afterwards pursued a course pointed out by counsel, he was not liable notwithstanding the fact that counsel might have been mistaken in the advice given, called to the attention of the judge the substantive issue of the effect of advice of counsel on the question of probable cause, and an instruction should have been given that the defendant should not be found liable if the jury found, in addition to the facts predicated in the request, that the defendant acted in good faith and made a full and honest disclosure to counsel of all the material facts within his knowledge and belief.

Failure of one, consulting counsel with respect to the propriety of his charging another with criminal violation of certain provisions of the election laws in connection with an election in a town, to state to counsel that the population of the town was less than ten thousand, which the client knew to be the fact, did not require a finding of lack of probable cause in an action for malicious prosecution against the client where, following counsel's advice, he made the charge and, because the statutory provisions did not apply to a town with a population of less than ten thousand, there was a finding of not guilty thereon, unless it was also shown that as a reasonable man he ought to have known that such fact was material to the advice he sought and that counsel did not already know the fact.

At the trial of an action for malicious prosecution on the charge of making false statements in violation of election laws, the defendant was entitled to make inquiry of the plaintiff in cross-examination respecting the truth or falsity of the statements.

The defendant at the trial of an action for malicious prosecution on a criminal charge was not entitled to examine a judge, who had found the plaintiff not guilty, as to "the basis" for his finding.

Tort. Writ in the Superior Court dated April 26, 1940.

The case was tried before *Swift*, J. Requests by the defendant for rulings refused by the trial judge, referred to in the opinion, were as follows: "3. The defendant, having been advised by competent counsel to sign the complaints against the plaintiff is not answerable to the plaintiff for the prosecution thereunder unless the plaintiff proves by a preponderance of evidence that the defendant in bad faith concealed material facts within his knowledge from his counsel. This rule of law applies even though counsel was mistaken in law in the advice he gave the plaintiff. 4. The following facts have been stipulated by the parties in this case and must be considered as such by the jury: . . .

There followed the statement of facts stipulated as set out in the second paragraph of the opinion. "6. The defendant had probable cause to believe a crime had been committed by the plaintiff if he in good faith believed that the [plaintiff] had caused to be made or published a false statement in relation to a candidate for election to public office unless the defendant, at the time he signed the complaint, knew in fact that G. L. c. 55, § 34A, did not apply to towns of less than ten thousand population. 7. The defendant had probable cause to believe a crime had been committed by the plaintiff if he in good faith believed that the [plaintiff] intentionally caused to be distributed a circular designed to defeat a candidate for public office, on which circular there did not appear the name and address of some voter, unless the defendant, at the time he signed the complaint, knew in fact that G. L. c. 55, § 34, did not apply to towns of less than ten thousand population."

"12. If the defendant did not withhold any information from his counsel with the intent to procure an opinion that might operate to shelter and protect him against a suit, but, on the contrary, if he, being doubtful of his legal rights consulted learned counsel with a view to ascertain them, and afterwards pursued the course pointed out by his legal adviser, he is not liable to this action, notwithstanding his counsel may have mistaken the law."

Portions of the charge to the jury were as follows: "The defendant contended that he believed that there was a violation of the corrupt practice act, in that the circular was not signed; that false statements were made in it, and that they referred to him. It could not be a violation of the corrupt practice act, because it does not apply to towns of that population. Whether or not there were statements in that circular that were false is not before this jury, because the section with reference to false statements is not of any consequence as applicable to towns under ten thousand. With this circular, he proceeded to consult Mr. Norman, and had a conference with him. When he went [to Mr. Norman] he had full knowledge that the town of Barre had only three thousand eight hundred

people , certainly under ten thousand am a. He testi-
fied that he did not tell Mr. Norman about that. Now, it
is for you to say, whether or not any probable cause existed
to think that there was a violation of the corrupt practice
act. If one has knowledge, he is supposed to disclose that
knowledge to the attorney from whom he seeks advice. .
If he did not, and seeks self defence under the protection
that he went to an attorney for advice, and followed the
advice, that is no protection once self interest on the facts,
are [*sic*] shown. To have the protection of legal counsel
presupposes an honest, fair and complete statement of the
facts as the claimant [*sic*] knew them to exist at the time.
Ignorance of the law does not afford protection.
at "If he was proceeding under a statement which depends,
at least in part, upon knowledge of population, and if he
had the knowledge and he failed to give that honest state-
ment to the man from whom he wanted a legal opinion, it
is for you gentlemen to determine whether or not it was a
full disclosure of the facts as the defendant knew them to be,
to the attorney.    It was his bounden duty to disclose
the fact to his counsel to whom he went for advice, having
a knowledge that that law under that section did not apply
to the towns like Barre. And it is for you to determine
whether or not there would have been any prosecution,
whether there would have been any inquest, whether there
would have been any investigation.    the
. Mr. Pratt states here as a witness, that he did not ac-
quaint Mr. Norman with the fact that the town of Barre
had a population under ten thousand people and that he,
Mr. Pratt, knew the population of Barre at the time of the
conference. The existence of probable cause depends upon
the facts within the knowledge of the defendant at the time
the prosecution was instituted and not upon subsequent
events nor upon matters then unknown to him. Probable
cause involves the honest and reasonable belief of the party
prosecuting. Probable cause is the essential ground of this
action. Other things may be inferred from a want of prob-
able cause, but probable cause could not be inferred from
something else.

"Now, if a man prosecutes a cause or a complaint, having knowledge that if he made the fair, whole, honest statement of the facts there could be no prosecution, there could be no complaint issued, there could be no inquest, — then it is for you to determine what interpretation you will give to that procedure, as to whether or not one, with the full knowledge (as this defendant said he had at the time,) was proceeding with or without probable cause. . . .

"Now, all through these proceedings the defendant stated, under oath, that he had a knowledge of the population of his town, and within four sections of the section that he referred to was the section that stated that the previous sections, 34 and 34A, did not apply to towns of the size of Barre. He is presumed to know the law, as everybody is presumed to know the law. He had a full knowledge of the existence of a material fact. He proceeded and signed the complaints, which resulted in the arrest of Higgins, and the obligation, in order to get his freedom, to furnish a bond for his appearance when needed. He is presumed to know whether or not the statute applied to towns like his or not."

*S. C. Rand,* (*D. D. Swain & F. R. Johnson* with him,) for the defendant.

*F. P. McKeon,* (*F. W. Hiller* with him,) for the plaintiff.

WILKINS, J. This is an action of tort for malicious prosecution for violation of G. L. (Ter. Ed.) c. 55, §§ 34 and 34A, arising out of the campaign for election to the board of selectmen at the town meeting of Barre held March 4, 1940, in which the plaintiff and the defendant were candidates. The jury returned a verdict for the plaintiff. The defendant's exceptions relate to denial of his motion for a directed verdict, refusal of certain of his requests for instructions, and exclusion of evidence.

Certain facts are not in dispute. About March 2, 1940, two days before election, the plaintiff distributed a printed circular entitled "Voters take notice!" and signed "An Interested Taxpayer." Much of the circular was laudatory of the plaintiff and his candidacy, but one paragraph, which in fact related to the defendant, although not mentioning his name, was, "Is Mr. Higgins's opponent going to pay all

the town employees 5c a mile to get to work. He is charging that and he is also charging $1.00 per hour for repairing the school building. It's nice to be chairman of different committees and O.K. your own bills." At that time Edwin G. Norman, Esquire, a former district attorney of Worcester County, was a practising lawyer with an office in Worcester. He died before the trial. With respect to him the parties filed a stipulation, for what reason it does not appear, which was as follows: "Now come the parties hereto and stipulate that the following shall be considered as facts in the case, but not all the material facts are herein agreed to: 1. The late Edwin G. Norman first became counsel for the defendant in the matter of advising him whether the plaintiff had criminally violated General Laws, Chapter 55, Section 34 and/or General Laws, Chapter 55, Section 34a on or about March 3, 1940, and he continued to act as such counsel for the defendant in respect of said Pratt's claim of an alleged criminal violation by Higgins of said Chapter 55, Section 34 and/or Chapter 55, Section 34A until the final conclusion of the criminal proceedings at the Central District Court of Worcester on the 23rd day of April, 1940, which criminal proceedings were instituted by the complaints made, signed and sworn to by said Pratt. 2. Said Norman advised said Pratt to make, sign and swear to said complaints. 3. Prior to, and at the time of the giving of said advice to said Pratt, said Norman did not examine General Laws, Chapter 55, Section 38. 4. When said Norman advised said Pratt to make, sign and swear to said complaints, said Norman was mistaken in law in respect thereto. 5. Said Norman was a member of the Massachusetts Bar for many years and was competent counsel to be consulted by said Pratt as aforesaid. This agreed statement of facts does not preclude the plaintiff from offering evidence at the trial of additional material facts to prove that said advice of counsel does not constitute defense to this action, or from offering any additional evidence to sustain his cause of action. The defendant reserves the right to prove additional facts appropriate to sustain his defense as pleaded."

On March 15, 1940, the defendant signed and swore to

a complaint addressed to the Central District Court of Worcester reading as follows: "Ernest W. Pratt . . . on oath complains that reasonable grounds exist for believing that certain laws relating to the assessment, qualification or registration of voters, or to voting lists or ballots, or to primaries, caucuses, conventions and elections or to any matters pertaining thereto, in the Town of Barre in said County, to wit: the annual election of Town Officers in said Town, held March 4, 1940, have been violated. Wherefore your complainant prays this honorable Court that an Inquest may be held to inquire into such alleged violation of Laws." The complaint was brought under, and was substantially in the language of, G. L. (Ter. Ed.) c. 55, § 39. This "statute was intended to give to the judges of the district courts power to hold election inquests when the public interests seem to require that an inquest be held, but to leave it to their discretion, as judicial officers, in each instance whether to hold such inquest or not." *Irwin* v. *Municipal Court of the Brighton District of the City of Boston,* 298 Mass. 158, 160. The judge of the District Court exercised his discretion and held such inquest on March 20. As required by G. L. (Ter. Ed.) c. 55, § 40, an assistant district attorney attended and examined the witnesses. Fourteen witnesses, including the defendant but not the plaintiff, gave testimony, which was reduced to writing by a stenographer. G. L. (Ter. Ed.) c. 55, § 42. The evidence related entirely to distribution of the campaign circular and its accuracy. No reference was made by anyone to the population of Barre. On April 17 the judge of the District Court filed a report in the Superior Court, Worcester County, under G. L. (Ter. Ed.) c. 55, § 42, which provides, "Such court or trial justice . . . if he finds that the law has been violated, shall report to the superior court all the material facts and the names of any persons guilty of any such violation." The report in part read: "The testimony offered before me showed that while Pratt was chairman of the Water Supply Committee and had done some work for the Water Department of the Town of Barre, he did not O. K. any of his own bills, that he did not charge the town

5¢ a mile to get to work nor did he charge $1.00 an hour
for repairing the school building except for roofing work
that was done on that building, and that his ordinary
charge was 75¢ an hour. This circular was not signed in
the manner required by G. L. (Ter. Ed.) Chap. 55 Sec. 34
but simply with the words, 'An Interested Tax Payer.'
Not only did Higgins distribute and cause to be distributed
the circulars in question but there was testimony that he
had caused it to be made and published. Upon the evidence
submitted at the inquest, at which said Higgins was not
called as a witness, I find that there has been a violation of
the provisions of G. L. (Ter. Ed.) Chap. 55 Sections 34 and
34A and that said Joseph H. Higgins appears to be guilty
of such violations. As required by the provisions of G. L.
(Ter. Ed.) Chap. 55 Section 44, I have issued process for
his apprehension; to wit, summonses requiring him to
appear to answer in the Central District Court of Worcester
to complaints alleging violations of the provisions of G. L.
(Ter. Ed.) Chap. 55 Sections 34 and 34A."

On April 16, the defendant had gone to the clerk's office
of the District Court, and sworn to two complaints pre-
pared by the clerk. One charged that the plaintiff on March
2, 1940, "did intentionally distribute, or cause to be dis-
tributed a circular or poster designed or tending to injure
or defeat a candidate for election to a public office, by criti-
cising his personal character or political action, contrary to
the provisions of Chapter 55, Sec. 34 of G. L." The other
charged that the plaintiff on the same day "did cause to
be made or published a false statement in relation to a
candidate for election to public office, which did tend to
injure or defeat such candidate" contrary to § 34A.

On April 23, the two criminal complaints were heard in
the District Court by a special justice. The same assistant
district attorney put in the evidence of the same fourteen
witnesses who testified in the same order as at the inquest,
and then rested. The plaintiff's counsel, who had cross-
examined the witnesses, obtained the agreement of the
assistant district attorney that the population of Barre was
thirty-five hundred ninety, and rested after calling the at-

tention of the court to G. L. (Ter. Ed.) c. 55, § 38, which read, "Sections one to thirty-seven, inclusive, shall apply to all public elections, except of town officers in towns of less than ten thousand inhabitants, . . . and, so far as applicable, to the nomination by primaries, caucuses, conventions and nomination papers of candidates to be voted for at such elections." A recess was taken to enable the assistant district attorney "to look into this," and thereafter the plaintiff was found not guilty and discharged.

The defendant testified in the case at bar that he knew that the population of Barre was about thirty-eight hundred; that he did not tell counsel that it was under ten thousand; that he had no conversation with counsel as to the population; and that counsel never asked him what it was. The bill of exceptions contains the following from the defendant's testimony: "He [the defendant] asked him [Mr. Norman] whether in view of Chapter 55, Sec. 38 Mr. Higgins was guilty of any criminal offence. He did not before consulting Mr. Norman examine the statute himself. . . . He did not ask Mr. Norman if Mr. Higgins might be guilty of the criminal violation of the election laws with special reference to the effect of section 38." There was also testimony from one Dunbar, called as a witness by the plaintiff, that shortly after the election the defendant "had the law on the conviction of illegal practice of Mr. Higgins," whether "on book or on a paper" he did not know, but after witness read it "he could readily see conviction meant jail."

The defendant, after excepting to the denial of his motion for a directed verdict, seasonably presented requests for instructions, and following the charge excepted to the refusal to give requests numbered 3, 4, 6, 7, and 12. There was "a distinct declaration that he excepted to the denial" of his requests. *Jones* v. *Newton Street Railway*, 186 Mass. 113, 114. But no exception was taken to the charge in so far as it was inconsistent with these requests or in any other respect. The plaintiff argues that for that reason the exceptions to denial of the requests must be overruled. This argument is unsound. We are still concerned with the

manner in which the judge dealt with the requests. *Galligan* v. *Old Colony Street Railway*, 182 Mass. 211, 213–214. *Ahern* v. *Boston Elevated Railway*, 210 Mass. 506, 510. *Bell* v. *Dorchester Theatre Co.* 308 Mass. 118, 123.

The defendant's principal contentions relate to the issue of probable cause. The burden was on the plaintiff to show, as an essential part of his case, that the charges were instituted without probable cause. *Cloon* v. *Gerry*, 13 Gray, 201, 202. *Dennehey* v. *Woodsum*, 100 Mass. 195, 197. *Folger* v. *Washburn*, 137 Mass. 60. *Keefe* v. *Johnson*, 304 Mass. 572, 577. This must be affirmatively proved, and may not be inferred from the existence of malice (*Parker* v. *Farley*, 10 Cush. 279, 281), or from the fact of acquittal or anything else (*Lewis* v. *Goldman*, 241 Mass. 577, 579). Probable cause is "such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty." *Bacon* v. *Towne*, 4 Cush. 217, 238–239. The defendant's honest and reasonable belief, not the actual state of things, governs. *Bacon* v. *Towne, supra*, 239. *Kidder* v. *Parkhurst*, 3 Allen, 393, 396. *Good* v. *French*, 115 Mass. 201, 204. "His duty is not to ascertain whether there is a defence, but whether there is reasonable and probable cause for a prosecution." *Herniman* v. *Smith*, [1938] A. C. 305, 319.

As showing that he acted with probable cause the defendant relies on (1) advice of counsel and (2) the campaign circular. As will appear, the motion for a directed verdict could not have been granted on either ground. Apart from the advice of counsel the defendant did not have reasonable cause for prosecuting. The facts known to him showed that the plaintiff had committed no crime. *Wills* v. *Noyes*, 12 Pick. 324, 326–327. *Brennan* v. *Schuster*, 288 Mass. 311, 315–316. *Parli* v. *Reed*, 30 Kans. 534, 536. *State Life Ins. Co.* v. *Hardy*, 189 Miss. 266, 277–278. *Brown* v. *Kisner*, 192 Miss. 746, 762. *Nehr* v. *Dobbs*, 47 Neb. 863, 871. *Hazzard* v. *Flury*, 120 N. Y. 223, 227. *Smith* v. *Deaver*, 49 N. C. 513, 515. *Hall* v. *Hawkins*, 5 Humph. 357, 359. Am. Law Inst. Restatement: Torts, § 662, com-

ment j; compare comment l. The defendant's requests numbered 6 and 7 were rightly denied.

The substantial question is whether there was probable cause for prosecution because the defendant consulted Mr. Norman, who advised him to make the several complaints. The distinction between one who acts without legal advice and one who acts with it is stated by Chief Justice Shaw in *Wills* v. *Noyes*, 12 Pick. 324, 327: "A man ought not to take out legal process, to seize the property or arrest the person of another, without some knowledge on the subject; and he ought to be responsible for the consequences, if he does this in utter recklessness and ignorance. But the presumption is in point of fact, that he does not know the law, because it is within common experience that men, not themselves instructed in the law, do not ordinarily take such measures without legal advice. . . . [The] ruling of the Court . . . merely put the burden upon the defendants to rebut that presumption, which they might do by any proof showing . . . that they acted in good faith under the advice of counsel. And such advice, given upon a case truly stated and the advice honestly pursued though incorrect, will rebut such presumption and constitute a good protection for the client." But the motion for a directed verdict could not have been allowed on the mere basis that the defendant consulted competent counsel who mistakenly advised him, or on the basis of the facts stipulated. The stipulation was, of course, binding upon both parties to the extent of the specific facts agreed. It did not, however, cover additional factors of equal importance. The applicable principles are to be found in *Monaghan* v. *Cox,* 155 Mass. 487, 489–490: "To establish the defence, it is required of the party himself, if he claims protection because he acted upon the advice of others, that he shall act in good faith believing that he has good cause for his action, and not seeking to procure an opinion in order to shelter himself; that he shall make a full and honest disclosure of all the material facts within his knowledge or belief; that he shall be himself doubtful of his legal rights, and shall have reason to presume that the person to whom he applies, or whose

advice he follows, is competent to give safe and prudent counsel; and that he shall honestly pursue the directions of his adviser; the adviser must be learned in the law, and of such training and experience that he may safely be presumed to be competent to give wise and prudent counsel in important matters, and must act under a sense of responsibility. By our own decisions . . . if upon the evidence it is clear that the complainant so acted, and that his adviser was a counsellor at law, the defence is established, and the court will direct a verdict for the defendant. *Allen* v. *Codman*, 139 Mass. 136. But if upon the evidence the facts essential to the defence are in dispute, they are to be submitted to the jury." See also *Stone* v. *Swift*, 4 Pick. 389, 394; *Wills* v. *Noyes*, 12 Pick. 324, 326–327; *Olmstead* v. *Partridge*, 16 Gray, 381, 383; *Donnelly* v. *Daggett*, 145 Mass. 314, 318; *Black* v. *Buckingham*, 174 Mass. 102, 106–107; *Burnham* v. *Collateral Loan Co.* 179 Mass. 268, 274; *Healey* v. *Aspinwall*, 195 Mass. 453, 456; *Casavan* v. *Sage*, 201 Mass. 547, 553; *Griffin* v. *Dearborn*, 210 Mass. 308, 313; *Boylen* v. *Tracy*, 254 Mass. 105, 107–108; Am. Law Inst. Restatement: Torts, §§ 662, 666. The testimony was none too full as to what facts the defendant related to counsel. Whether he made the required disclosure within the above rule was, on the evidence, for the jury. The defendant's testimony contained literal inconsistencies, and there is some evidence which casts doubt on whether he "was honestly following advice honestly asked." See *Connery* v. *Manning*, 163 Mass. 44, 47. So it was likewise for the jury to say whether the defendant "acted bona fide in regard to the consulting of counsel, and believed that he had a good cause of action, and honestly pursued the advice and direction of his legal adviser." *Stone* v. *Swift*, 4 Pick. 389, 394. The defendant's motion for a directed verdict was rightly denied.

The defendant's twelfth request, taken almost verbatim from *Stone* v. *Swift*, 4 Pick. 389, 393, was: "If the defendant did not withhold any information from his counsel with the intent to procure an opinion that might operate to shelter and protect him against a suit, but, on the contrary, if he,

being doubtful of his legal rights consulted learned counsel with a view to ascertain them, and afterwards pursued the course pointed out by his legal adviser, he is not liable to this action, notwithstanding his counsel may have mistaken the law." As was said in *Black* v. *Buckingham*, 174 Mass. 102, 107, "This states in a somewhat abbreviated form the rule which has long existed in this Commonwealth. . . . Of course to make the advice of a counsel a . . . [protection] the person consulting him must act in good faith, and he must make a full and honest disclosure of all the material facts within his knowledge and belief. If the judge had added these elements to the request, the defendant would have had no ground of exception, but it seems to us that it would be too narrow and technical a view to hold that this exception must be overruled because these elements were not added. The attention of the judge was called to the substantive . . . [issue] of advice of counsel, and he should have given appropriate instructions upon the subject." Since this was not done, this exception must be sustained. *Bergeron* v. *Forest*, 233 Mass. 392, 402. *Morey & Co. Inc.* v. *Sweeney*, 287 Mass. 210, 214. *Bell* v. *Dorchester Theatre Co.* 308 Mass. 118, 123. It is unnecessary to consider whether the defendant's third request had the same effect.

As there must be a new trial, we express the view that a failure of the defendant to state to counsel what was the population of Barre would not necessarily be a fatal omission. If the defendant as a reasonable man should not have known that such fact was material or that G. L. (Ter. Ed.) c. 55, § 38, excluded towns of less than ten thousand inhabitants from the scope of the earlier sections of that chapter, this bit of statistical information known to him would not have been one of the "material facts within his knowledge and belief." See *Monaghan* v. *Cox*, 155 Mass. 487, 489. It would not have been a part of "all matters within his knowledge which, as a man of ordinary intelligence, he is bound to suppose would have a material bearing upon the question of the innocence or guilt of the person suspected." *Burnham* v. *Collateral Loan Co.* 179 Mass. 268, 274. We think that the proper rule is that he who relies on the pro-

tection of legal advice must have given all the facts he knew and reasonably ought to have deemed material, but only such facts. A more stringent standard would force a layman endeavoring to ascertain whether grounds existed for a prosecution not merely to make a fair statement of the case but to enumerate at peril everything which he might happen to know and which subsequently might be ruled material, even though, as here, materiality might depend upon detailed knowledge of a legislative enactment. A client has the right to expect that if there be a collateral fact which is not immediately concerned with a layman's view of the apparent merits of the case or the conduct of the parties but which becomes pertinent only because of some statute or rule of law, counsel will so advise him. In this type of case the main purpose of engaging counsel is that he may better judge the adequacy of the facts. *Harris v. Woodford,* 98 Mich. 147, 150. *Williams v. Frey,* 182 Okla. 556, 559–560. *Walter v. Sample,* 25 Penn. St. 275, 277. *King v. Apple River Power Co.* 131 Wis. 575, 583. It is the common sense view. To hold otherwise would be to disregard the practical problems of everyday life, turn legal consultation into a farce, and create a most undesirable deterrent to prosecution for crime. This precise point has not arisen in any case we have seen. Nor has any decision come to our attention which even intimates that a fact which is pertinent only to show a limited field of operation of a statute is one of the material facts in the case which a client, who happens to hold that fact in his fund of general knowledge but is reasonably unaware of its importance, must state to counsel learned in the law in order to be protected by his advice. Compare *Huf v. Hague,* 171 Wash. 302, 307–308. The numerous decisions in other jurisdictions are not uniform as to the rule governing the disclosure of facts to counsel. 34 Am. Jur., Malicious Prosecution, § 78. Many of the cases are collected in 18 L. R. A. (N. S.) 49. The general view we take has strong support. See *Johnson v. Miller,* 69 Iowa, 562, 575; *Harris v. Woodford,* 98 Mich. 147, 150; *Hopkinson v. Lehigh Valley Railroad,* 249 N. Y. 296, 300–301; Am. Law Inst. Restatement: Torts, § 666, comment f,

"The advice of an attorney is a protection to one who initiates criminal proceedings only if the latter fully discloses to his counsel all the facts which are within his information and which a reasonable man would regard as pertinent. . . . There must be a full disclosure of all matters which a reasonable man would regard as material for the attorney to know in order that he may give a sound opinion. No facts which a reasonable man would regard as material may be suppressed"; 2 Greenleaf on Evidence (16th ed.) § 459; Prosser on Torts, § 96. See also *Hays* v. *Stine*, 289 Fed. 224, 226; *Brown* v. *Smith*, 83 Ill. 291, 298–299; *First State Bank* v. *Denton*, 82 Okla. 137, 140; *Lee* v. *Jones*, 44 R. I. 151, 159; *Young* v. *Jackson*, 29 S. W. 1111, 1113 (Tex. Civ. App.).

Even if it should be found on the testimony introduced at another trial that the defendant not only knew the population of Barre but reasonably ought to have known that such fact was material, nevertheless if counsel, a former district attorney elected in part by the voters of the town of Barre (the population of which according to the testimony never reached even five thousand), already shared the knowledge that Barre had less than ten thousand inhabitants, the defendant was not required to proclaim such fact to him. The law makes no superfluous demand for its recital. *Brown* v. *Smith*, 83 Ill. 291, 298–299. *Henderson* v. *McGruder*, 49 Ind. App. 682, 692. *Shea* v. *Cloquet Lumber Co.* 92 Minn. 348, 352. *Youmans* v. *Berkner*, 167 Minn. 67, 71. *Miller* v. *American National Bank*, 216 Minn. 19. *Main* v. *Healy*, 100 Wash. 253, 257.

The defendant's fourth request could not have been given. It singled out specific facts for special treatment in the charge. *Callahan* v. *Boston Elevated Railway*, 286 Mass. 223, 227, and cases cited.

Questions of evidence remain. The defendant's counsel asked the plaintiff on cross-examination, "Were there any bills Mr. Pratt was ever paid five cents a mile to get to work?" The question was excluded. This was error. The truth or falsity of this statement in the campaign circular was competent to show whether the defendant had made an accurate disclosure of facts to counsel. If the distributor of

the statement could not substantiate its charges, this would be highly cogent proof. "Whatever legitimately tends to show probable cause for the prosecution or the good faith of the defendant is . . . admissible on his behalf to meet the evidence of the plaintiff." *Falvey* v. *Faxon*, 143 Mass. 284, 285. *Brigham* v. *Aldrich*, 105 Mass. 212. The suggestion of the plaintiff that the testimony of the defendant covered this whole subject matter is without merit. It likewise is no objection that there was no offer of proof. *Stevens* v. *William S. Howe Co.* 275 Mass. 398, 402.

The question as to "the basis" for the finding of not guilty which defendant's counsel asked the special justice of the District Court was rightly excluded. *Fayerweather* v. *Ritch*, 195. U. S. 276, 306–307. *Noland* v. *People*, 33 Colo. 322, 324. *Brinkerhoff* v. *Home Trust & Savings Bank*, 109 Kans. 700, 709. *State* v. *Donovan*, 129 N. J. L. 478, 489. *Hinson* v. *Powell*, 109 N. C. 534, 537. *Dempsey* v. *State*, 27 Tex. App. 269, 273. Freeman on Judgments (5th ed.) § 771. 38 C. J. 488. See *Commonwealth* v. *White*, 147 Mass. 76; *Phillips* v. *Marblehead*, 148 Mass. 326, 329–330; *Chicago, Burlington & Quincy Railway* v. *Babcock*, 204 U. S. 585, 593. Compare *Perkins* v. *Parker*, 10 Allen, 22, 24; *Boston & Maine Railroad* v. *T. Stuart & Son Co.* 236 Mass. 98, 102.

We do not consider other exceptions relating to matters which probably will not arise again.

*Exceptions sustained.*